UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARY WEST-BOWLSON,

Plaintiff,

v.

SUN WEST MORTGAGE
COMPANY, INC.,

Defendant.

Case No. 23-cv-12105
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 17) AND TO DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER (ECF NO. 18)**

---

## I.    Introduction

Plaintiff Rosemary West-Bowlson brings this action against Defendant Sun West Mortgage Company, Inc., for allegedly failing to respond to inquiries about her mortgage as required under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2601 *et seq.* ECF No. 10.  West-Bowlson also asserts state-law claims of breach of contract and quiet title, claiming that her mortgage should be discharged based on an alleged accord and satisfaction of the loan.  *Id.*

Sun West moves for judgment on the pleadings, and West-Bowlson moves for a preliminary injunction or temporary restraining order enjoining Sun West from foreclosing on her home. ECF No. 17; ECF No. 18. The Honorable Terrence G. Berg referred the case to the undersigned for all pretrial proceedings under 28 U.S.C. § 636(b). ECF No. 14. The Court **RECOMMENDS** that Sun West's motion be **GRANTED IN PART AND DENIED IN PART** and that West-Bowlson's motion be **DENIED**.

## II.    Background

In December 2020, West-Bowlson and Sun West entered a mortgage loan agreement for $336,792.00, secured by real property located in Farmington Hills, Michigan. ECF No. 17-1; ECF No. 17-2. Sun West is the original lender and current servicer of the mortgage. ECF No. 10, PageID.38; ECF No. 17-1; ECF No. 17-2.

In June 2023,[1] West-Bowlson sent Sun West a qualified written request (QWR) seeking information about her mortgage loan, including the first 20 pages of a pooling and servicing agreement (PSA). ECF No. 10, PageID.38, 52-53. In Sun West's response to West-Bowlson, it provided some of the requested information but said that it was not required to provide information about the PSA. *Id.*, PageID.39-40, 57-59. In July

---

[1] Although the letter is dated March 2023, West-Bowlson alleges that she sent it in June 2023. *See* ECF No. 10, PageID.38, 52.

2

2023, West-Bowlson sent Sun West a second QWR, claiming that Sun West's earlier response was deficient.  *Id.*, PageID.40, 61-62.  She requested certain information about the mortgage loan, including the PSA. *Id.*  Sun West responded with its objections to West-Bowlson's requests. *Id.*, PageID.64-66.

West-Bowlson then sent Sun West a letter disputing the entire debt and requesting copies of the original mortgage agreement, validation and verification of the debt, and the name and address of the original creditor. *Id.*, PageID.41, 68-69.  Along with the letter, West-Bowlson sent a check for $2,375.75 indicating that it was "full and final payment in accord and satisfaction" of her account.  *Id.*, PageID.41-42, 91.  West-Bowlson made no further payments on her mortgage.  *Id.*, PageID.77.

In October 2023, West-Bowlson sent Sun West a notice of error alleging that it had improperly assessed late fees, reported negatively on her credit report, and demanded payment of the mortgage, despite cashing the final check in satisfaction of the account.  *Id.*, PageID.42, 74.  Sun West responded in November 2023, stating that the loan was past due and not paid off.  *Id.*, PageID.42, 77.  Sun West scheduled a foreclosure sale in February 2024.  ECF No. 18, PageID.195.  West-Bowlson seeks to enjoin that sale.  *Id.*  But Sun West asserts that "there is no longer any foreclosure sale pending with respect to [West-Bowlson's] property," as she reinstated

3

her mortgage after filing the motion for injunctive relief.  ECF No. 25, PageID.445 n.3 (cleaned up).

West-Bowlson brings RESPA claims based on Sun West's alleged failure to adequately respond to her June and July 2023 QWRs or her October 2023 notice of error.  *Id.*, PageID.40-43.  West-Bowlson also brings breach of contract and quiet title claims seeking to enforce the alleged "agreement" that her final check to Sun West satisfied the entire balance of her mortgage debt.  *Id.*, PageID.44-49.

## III.    Analysis

### A.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards applicable to a motion to dismiss under Rule 12(b)(6).  *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).  A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint's

4

allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

Although the plausibility of a complaint is usually assessed on the face of the complaint, a court may also consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). And "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money*, 508 F.3d at 335-36; *see also Weiner v.*

*Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  So for the motion here, the Court has considered the documents West-Bowlson attached to her complaint, as well as the mortgage note, loan agreement, and Sun West's mortgage broker license, which are public records.

## B.

West-Bowlson alleges that Sun West violated RESPA, 12 U.S.C. § 2605(k)(1)(D), and its implementing regulation, "Regulation X," 12 C.F.R. § 1024.36(d), by failing to respond adequately to her June and July 2023 QWRs.  ECF No. 10, PageID.38-41.  RESPA and Regulation X allow "borrowers to notify mortgage servicers of possible account errors and make requests for information relating to" the mortgage loan.  *Macholtz v. Carrington Mortg. Servs., LLC*, 499 F. Supp. 3d 434, 448 (W.D. Mich. 2020); *see* 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36(a).

Sun West's briefing focuses on its statutory duties under § 2605 rather than the regulatory rules under § 1024.36.  Although "the obligations under each of those laws may overlap, they are not coterminous."  *Colson v. Wilmington Sav. Fund Soc'y*, No. 17-11387, 2018 WL 4658997, at *3 (E.D. Mich. Sept. 28, 2018).  *Colson* describes the distinctions:

> Under RESPA, any "servicer of a federally related mortgage loan" that receives a "qualified written request from the borrower…for information relating to the servicing of such loan" must, "after conducting an investigation, provide the borrower with a written explanation or clarification that

6

includes…information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e). A QWR is "a written correspondence…that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A loan servicer is required to respond to a borrower's QWR only to the extent that the request relates to the servicing of the loan. 12 U.S.C. § 2605(e)(1)(A). Under RESPA, loan servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, …and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Regulation X, on the other hand, does not limit the scope of a loan servicer's duty to reply to a borrower to requests related to the servicing of the loan. Section 1024.36(a) broadly requires servicers to "comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." *Id.* § 1024.36(a). Importantly, the regulation states that "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." *Ibid.* Put another way, when a request for information concerns the servicing of a mortgage loan, as defined in 12 U.S.C. § 2605(i)(3), a servicer must comply with section 1024.36's requirements in addition to those spelled out in section 2605. When a servicer receives a broad request for information that does not concern servicing of the loan, its duty to respond is governed by section 1024.36 only.

*Id.* at *4.

West-Bowlson's June 2023 QWR requested: (1) the current owner or assignee of the mortgage loan, and contact information for that entity and one of its officers; (2) the location of the original mortgage note; (3) a copy of the original mortgage note and any allonges; (4) the first 20 pages of the PSA;[2] and (5) documentation that the mortgage note was delivered to a trust within 30 days of closing on the loan.  ECF No. 10, PageID.52-53. The July 2023 QWR similarly requested: (1) a copy of the original mortgage note with Sun West's endorsement; (2) the first 20 pages of the PSA; (3) documentation that the mortgage note was delivered to a trust within 30 days of closing on the loan; (4) documentation of endorsement of the mortgage note to Deutsche Bank; and (5) a record chain of title of the mortgage note.  *Id.*, PageID.62.

Sun West argues that West-Bowlson's requests are not QWRs requiring a response under § 2605(e) because they do not relate to loan servicing.  ECF No. 17, PageID.143-145.  Even if that were true, Sun West

---

[2] A PSA is a contract required when a mortgage loan is securitized: "A [PSA] is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents are transferred by and between the parties to the trust, and sets forth the various responsibilities of the parties to the trust."  *In re Smoak*, 461 B.R. 510, 515 (S.D. Ohio 2011).

was still bound by § 1024.36 if West-Bowlson's requests included her name, account information, and the information she sought regarding the mortgage loan.  *See Colson*, 2018 WL 4658997, at \*3-4; *see* 12 C.F.R. § 1024.36(a).  They did.  ECF No. 10, PageID.52-53, 61-62.

Section 1024.36 requires servicers to respond to requests by either providing the requested information or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information for further assistance."  12 C.F.R. § 1024.36(d)(1).  Those requirements do not apply if the servicer "reasonably determines" that the request seeks information that is duplicative, confidential, irrelevant, overbroad, or unduly burdensome.  *Id.* § 1024.36(f)(1).  If a request falls within one of those exempt categories, servicers must notify the borrower in writing of the basis for that determination.  *Id.* § 1024.36(f)(2).

Sun West responded to the June 2023 QWR by (1) identifying itself as the current owner of the mortgage loan and providing the contact information for its offices and one of its agents; (2) stating that the original mortgage note was located at a Deutsche Bank location in Santa Ana, California; and (3) enclosing a copy of the original mortgage note.  ECF No.

10, PageID.57-59.  Sun West declined to provide the PSA or prove delivery of the mortgage note to a trust, stating that it was not required to validate the debt with this information under 15 U.S.C. § 1692(g).  *Id.*  Thus, Sun West provided West-Bowlson with the information she requested, except for information about the PSA or trust.

Sun West responded to the July 2023 QWR by (1) enclosing a copy of the original mortgage note and explaining that Sun West was not legally required to endorse it and (2) stating that Sun West closed the loan, serviced it since then, currently owned the note, and never transferred ownership of the note to another lender.  *Id.*, PageID.64-66.  Sun West again declined to provide information about the PSA, delivery to a trust, or endorsement to Deutsche Bank, stating that the requests did not relate to servicing and thus did not warrant a response as a QWR.  *Id.*

Without discussing § 1024.36, Sun West contends that West-Bowlson has not stated a viable RESPA claim because the PSA and delivery of the note to a trust are irrelevant to West-Bowlson's mortgage account.  ECF No. 17, PageID.146; ECF No. 22, PageID.347-350.  Sun West emphasizes that it is the original mortgagee and current holder and servicer of the loan and that no allegations suggest that the loan is subject to a PSA or was transferred to a trust.  ECF No. 10, PageID.66; ECF No. 17, PageID.146; ECF No. 22; PageID.349.  But Sun West did not inform

West-Bowlson in writing that this information was irrelevant and thus exempt under § 1024.36(f)(1).  Instead, Sun West objected to providing the information under 15 U.S.C. § 1692(g) and because it did not relate to servicing.  ECF No. 10, PageID.57-59, 64-66.  Sun West may not provide a post hoc rationale for its failure to fully respond to West-Bowlson's requests.  *See Bivens v. Select Portfolio Servicing, Inc.*, No. 1:15-cv-4325, 2017 WL 8181523, at *8 (N.D. Ga. Dec. 18, 2017).

Nor has Sun West explained why it was exempt from responding to West-Bowlson's inquiry about Deutsche Bank's possession of the original mortgage note.  As discussed, the Court rejects Sun Bank's assertion that it did not need to respond because the request did not relate to servicing.  Thus, West-Bowlson has plausibly alleged that Sun West failed to comply with Regulation X in responding to her June and July 2023 QWRs.

**C.**

West-Bowlson also alleges that Sun West violated Regulation X, 12 C.F.R. § 1024.35(e), by failing to respond adequately to the October 2023 notice of error.  ECF No. 10, PageID.42-43.  Section 1024.35(e) requires servicers to respond to notices of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

11

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e).  In short, "a servicer must either correct the error identified by the borrower or, after conducting a reasonable investigation, respond in writing with an explanation of why it found no error and the information it relied on.  *Finster v. U.S. Bank Nat'l Assoc.*, 723 F. App'x 877, 880 (11th Cir. 2018).

The October 2023 notice of error asserted that West-Bowlson sent a final payment in July 2023 as "full and complete satisfaction of the account pursuant to MCL 440.3311 and/or UCC 3.311."  ECF No. 10, PageID.74. West-Bowlson asserted that, because Sun West cashed the check, it agreed that the full balance of the mortgage debt was satisfied.  *Id.*  Thus, West-Bowlson stated that Sun West improperly assessed late fees, reported negatively on her credit report, and demanded payment of the mortgage.  *Id.*, PageID.74-75.  In response, Sun West stated that the loan was 99 days past due and was "not considered as paid off."  *Id.*, PageID.77.  Because payments for September and October 2023 were not received when due, Sun West stated that the derogatory credit reporting

12

was correct.  *Id.*  It also noted that it had provided West-Bowlson with proof

of the debt validation and that her account was at risk of going into

foreclosure.  *Id.*

West-Bowlson asserts that Sun West's response violated

§ 1024.35(e) because it did not reasonably investigate or correct the

alleged errors, given its failure to recognize that her final check satisfied the

remaining balance.  *Id.*, PageID.42-43.  This claim lacks merit.  Michigan's

Uniform Commercial Code (UCC) governs the use of negotiable

instruments in accord and satisfaction of a claim:

> (1) If a person against whom a claim is asserted proves that
> (i) that person in good faith tendered an instrument to the
> claimant as full satisfaction of the claim, (ii) the amount of the
> claim was unliquidated or subject to a bona fide dispute, and
> (iii) the claimant obtained payment of the instrument, the
> following subsections apply.
>
> (2) Unless subsection (3) applies, the claim is discharged if the
> person against whom the claim is asserted proves that the
> instrument or an accompanying written communication
> contained a conspicuous statement to the effect that the
> instrument was tendered as full satisfaction of the claim.

Mich. Comp. Laws § 440.3311.  Thus, to satisfy § 440.3311, there must be

a good-faith tender as full satisfaction of the claim and a claim that is

unliquidated or subject to a bona fide dispute.  *Hoerstman Gen.*

*Contracting, Inc. v. Hahn*, 474 Mich. 66, 76 (2006).  "'Good faith" means

honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* (citing Mich. Comp Laws § 440.3103(1)(d)).

West-Bowlson's claim is not unliquidated. An unliquidated claim is "a claim in which the liability of the party or the amount of the claim is in dispute." *Id.* at 77 (cleaned up). By contrast, "[a] liquidated claim is one which can be determined with exactness from the agreement between the parties, or by arithmetical process, or by the application of definite rules of law." *Citizens Bank v. Pelham*, No. 302241, 2012 WL 335681, at *2 (Mich. Ct. App. Feb. 2, 2012) (quoting *Faith Reformed Church of Traverse City v. Thompson*, 248 Mich. App. 487, 493 (2001)) (cleaned up). West-Bowlson's original mortgage was for $336,792.00 and was subject to a specified interest rate and repayment terms. ECF No. 17-1; ECF No. 17-2. Because the debt could be determined with mathematical precision, West-Bowlson's mortgage was a liquidated claim. *See Citizens Bank*, 2012 WL 335681, at *2 (rejecting a mortgage debtor's accord and satisfaction defense based on his tender of a check marked "full payment" because the mortgage debt was liquidated).

Nor was the mortgage subject to a bona fide dispute. A bona fide dispute is "an honest dispute between the parties, based on disagreement regarding the validity or fairness of the contract, not simply based on the 'mere pretense' of the debtor attempting to avoid a payment he clearly

14

owes." *In re Walsh*, 443 B.R. 256, 257 (Bankr. D. Mass. 2010).  West-Bowlson disputed the debt in a letter mailed with the final check.  ECF No. 10, PageID.68-69.  But that letter does not clearly explain the grounds for the alleged dispute.  *Id.*  West-Bowlson neither disputed the amount of the outstanding debt nor claimed that the mortgage note was invalid.  *Id.*

At most, the letter asserted that Sun West failed to respond to the QWRs for the name and address of the original creditor, copies of the original mortgage note, and validation of the debt.  *Id.*  That dispute was not raised in good faith.  As described above, Sun West responded to those inquiries, explaining that it was the original and current owner and servicer of the mortgage loan and that the loan had never been transferred to another lender.  *Id.*, PageID.57-59, 64-66.  Sun West also enclosed copies of the original mortgage note listing itself as the lender.  *Id.*  Although Sun West did not respond to the inquiries about the PSA or trust, West-Bowlson does not explain how that failure gave rise to a good-faith dispute about the validity of the mortgage debt.  Other courts have similarly rejected debtors' attempts to manufacture bona fide disputes from baseless RESPA claims.  *See Schoenberger v. PNC Bank*, 534 F. Supp. 3d 1290, 1298 (W.D. Wash. Apr. 16, 2021) (rejecting the debtor's alleged bona fide dispute stemming from the spurious claim "that PNC violated RESPA, making the amount of his debt 'disputed'").

The pleadings also suggest that West-Bowlson did not act in good faith.  She raised a baseless dispute as a pretense to get her mortgage debt discharged and sent Sun West a check for $2,375.75 in full satisfaction of a mortgage debt of $336,792.00.[3]  In a similar case, the plaintiff never disputed his mortgage debt before mailing the lender a money order for a fraction of the outstanding debt, purportedly in full satisfaction of the claim.  *Miffin v. Selene Fin. LP*, No. 3:19-cv-64, 2019 WL 2437461, at *5 (E.D. Va. June 11, 2019).  The court dismissed the plaintiff's claim of accord and satisfaction under the UCC, stating that it was "aware of no authority that holds that such a gimmick constitutes 'good faith.'"  *Id.* West-Bowlson similarly did not act in good faith.

West-Bowlson relies heavily on *Shaw v. United Motors Prods. Co.*, 239 Mich. 194 (1927), in support of her claim.  ECF No. 18, PageID.200-202; ECF No. 21, PageID.295-297.  In that case, the plaintiffs sent the defendant a statement with an account balance of $1,762.50.  *Shaw*, 239 Mich. at 195.  The defendant sent the plaintiffs a check for $412.50 and a letter stating that the check was a full and final payment of the account.  *Id.* The defendant deposited the check but demanded payment of the balance;

---

[3] Even if West-Bowlson paid off a portion of the principal balance since executing the mortgage in December 2020, the outstanding balance was likely still in the hundreds of thousands of dollars in 2023.

the plaintiffs argued that his payment was an accord and satisfaction of the total debt.  The court agreed with the plaintiffs: "[I]f the tender is in full satisfaction of *an unliquidated claim* and the creditor is fully informed of the condition accompanying acceptance, an accord and satisfaction is accomplished if the money so tendered is retained."  *Id.* at 196 (cleaned up, emphasis added).  Because the trial judge had found that the debt was unliquidated, the court held that accord and satisfaction was reached.  *Id.* at 197.  But *Shaw* does not apply here because the mortgage debt was neither unliquidated nor subject to a bona fide dispute.

West-Bowlson's accord and satisfaction theory also conflicts with the statute of frauds.  *See* ECF No. 17, PageID.147-150.  That statute provides:

> A person shall not bring an action against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).  A financial institution is "a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, [or] a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act."  *Id.* § 566.132(3) (cleaned up).

Sun West is a licensed mortgage broker, lender, and servicer in Michigan.  ECF No. 17-3.  And West-Bowlson's theory that Sun West accepted her final check in full satisfaction of the mortgage debt amounts to an alleged promise to waive the interest and repayment provisions in the mortgage note.  The statute of frauds precludes such a claim.  *See Smith v. Bank or Am. Corp.*, 485 F. App'x 749, 753 (6th Cir. 2012) (a bank's oral promise to modify a mortgage loan was not enforceable under the statute of frauds).

Thus, West-Bowlson's RESPA claim that Sun West did not respond adequately to the October 2023 notice of error lacks merit and should be dismissed.

**D.**

West-Bowlson's breach of contract and quiet title claims also stem from Sun West's alleged acceptance of her final check in accord and satisfaction of the full mortgage debt under Michigan's UCC.  ECF No. 10, PageID.44-49.  For the reasons discussed with respect to the Regulation X

claim based on the October 2023 notice of error, those two state-law claims lack merit and should be dismissed.

**E.**

Although the Regulation X claim stemming from the June and July 2023 QWRs should survive Sun West's motion, West-Bowlson is not entitled to a preliminary injunction or temporary restraining order. Injunctive relief is unavailable under RESPA and Regulation X. *See* 12 C.F.R. § 1024.41 (providing that the provisions of Regulation X may be enforced under 12 U.S.C. § 2605(f), which authorizes monetary damages only); *Brimm v. Wells Fargo Bank, N.A.*, No. 15-11327, 2016 WL 3522315, at *7 (E.D. Mich. June 28, 2016).

## IV.    Conclusion

Thus, the Court **RECOMMENDS** that Sun West's motion for judgment on the pleadings be **GRANTED IN PART AND DENIED IN PART** (ECF No. 17) and that West-Bowlson's motion for preliminary injunction or temporary restraining order be **DENIED** (ECF No. 18).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 20, 2024

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 20, 2024.

s/Donald Peruski
DONALD PERUSKI
Case Manager